UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS DICESARE, II,<br>  Plaintiff,<br><br>  v.<br><br>TOWN OF STONINGTON, BARBARA J.<br>MCKRELL, and VINCENT A. PACILEO,<br>III, in their individual and official capacities,<br>  Defendants. | No. 15-cv-1703 (VAB) |

## ORDER ON MOTION TO DISMISS

  Plaintiff, Louis DiCesare, brings this action against Barbara J. McKrell, Vincent A. Pacileo, and the Town of Stonington ("Town"). ECF No. 18. His Amended Complaint consists of twelve counts, alleging violations of different Connecticut statutes, various violations of the United States Constitution under 42 U.S.C. § 1983 ("Section 1983"), retaliation in violation of the Family Medical Leave Act ("FMLA"), defamation, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and indemnification by the Town. Mr. DiCesare filed this action in the Superior Court of Connecticut, and Defendants removed it to this Court. ECF No. 2.

  Defendants have filed a motion to dismiss the Amended Complaint in part, for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 23. Specifically, Defendants move to dismiss Counts Six, Seven, Eight, Ten, and Eleven, arguing that Mr. DeCesare failed to exhaust his administrative remedies under the applicable collective bargaining agreement, and Count Nine, which Defendants argue

1

is based on a Connecticut statute that does not create a private right of action.  Motion at 1, ECF No. 23.

For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss the Amended Complaint in part.  Count Nine is dismissed for failure to state a claim because the Connecticut Freedom of Information Act does not allow a private right of action.  Counts Seven, Eight, Ten, and Eleven of the Amended Complaint are dismissed for lack of subject matter jurisdiction because Mr. DiCesare had not exhausted the administrative remedies provided in the CBA's grievance procedures.  Count Six will proceed because Mr. DiCesare need not exhaust the grievance procedures before bringing his FMLA claim.

## I.   FACTUAL BACKGROUND

The Court details only the facts that are relevant to the Defendant's partial motion to dismiss below.  Because Defendants' motion to dismiss challenges whether the Court has subject matter jurisdiction over certain of Mr. DiCesare's claims, the Court also considers certain facts that are contained in the exhibits attached to the motion to dismiss and Mr. DiCesare's opposition.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("However, when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

### A.   Plaintiff's Allegations

Mr. DiCesare alleges that he was a Highway Supervisor for the Town's Public Works Department from February 2009 until his termination on April 30, 2015.  Amend. Compl. ¶ 5, ECF No. 18.  On or around January 21, 2014, Mr. DiCesare was allegedly also recognized as a bargaining member covered by the Collective Bargaining Agreement ("CBA") between the Town and the Stonington Public Administrations Association, Connecticut Independent Labor

Union, Local #54 ("Union").  *Id.* ¶ 2.  On or around February 24, 2014, Ms. McKrell was appointed the Town's Director of Public Works.  *Id.* ¶ 13.  Mr. Pacileo was the Director of Administrative Services for the Town.  *Id.* ¶ 14.  This case concerns Mr. DiCesare's various allegations regarding Defendants' conduct during the period from July 2014 through Mr. DiCesare's termination on April 30, 2015, and some of Defendants' conduct following the termination.  *Id.* ¶¶ 18-55.

Mr. DiCesare alleges that, when he was first appointed Highway Supervisor, it was a non-bargaining unit position and not covered by the CBA.  Amend. Compl. ¶ 17.  On or around July 23, 2014, the Union filed a petition with the State Board of Labor Relations ("SBLR") seeking to expand its bargaining unit with the Town to include Mr. DiCesare's Highway Supervisor position.  *Id.* ¶ 28.  Mr. DiCesare alleges that the Town opposed the Union's petition, and that, since then, Ms. McKrell has allegedly been "gunning for his job."  *Id.* ¶ 20.  He alleges that the Town, through Ms. McKrell, began taking "retaliatory" action against him, including by modifying, eliminating, or reducing his duties; ignoring his requests to discuss performance expectations and responsibilities; and falsely accusing him of missing deadlines or failing to perform.  *Id.* ¶ 21.  On or around September 16, 2014, the SBLR allegedly agreed that Mr. DiCesare's position belonged in the Union and held an election on October 8, 2014, where the position was voted into the unit.  *Id.* ¶ 22.  On or around January 21, 2015, The SBLR allegedly issued a Decision and Dismissal of Objections and Modification of Unit, to formally modify the Union's bargaining unit to include Mr. DiCesare's position.  *Id.* ¶ 34.  The Town allegedly attempted to appeal this decision in a civil court action, but the SBLR's decision became final on or around March 27, 2015, and Mr. DiCesare's position was allegedly deemed a bargaining unit position as of January 21, 2015.  *Id.*

On or around October 9, 2014, the Town's First Selectman allegedly "publicly berated" Mr. DiCesare on the Town's public Facebook page, implying that Mr. DiCesare was responsible for "substandard management" on certain projects. Amend. Compl. ¶ 23. This allegedly caused Mr. DiCesare "physical manifestations of emotional distress" that required him to take medical leave from approximately October 14, 2014 to October 24, 2014. *Id.* ¶ 24. Mr. DiCesare alleges that, after he returned, Ms. McKrell continued to treat him in a "hostile and retaliatory manner." *Id.* ¶ 25. On or around October 30, 2014, Ms. McKrell allegedly removed him from another project, and Mr. DiCesare allegedly responded by email to complain that Ms. McKrell was retaliating against him. *Id.* ¶¶ 27-28. On or around November 4, 2014, Ms. McKrell allegedly issued Mr. DiCesare with a written warning. *Id.* ¶ 28.

### 1. Suspension

On or around January 7, 2015, Ms. McKrell allegedly issued Mr. DiCesure a pre-disciplinary notice informing him that she intended to impose a five day suspension for "insubordination and insufficient planning." Amend. Compl. ¶ 30. On or around January 16, 2015, Mr. DiCesare allegedly met with Ms. McKrell and the First Selectman to discuss that proposed suspension. *Id.* ¶ 32. Mr. DiCesare alleges that the Town did not allow him to bring his attorney to the meeting. *Id.* The Town suspended Mr. DiCesare for five days, starting on or around January 20, 2015. *Id.* ¶ 33.

Mr. DiCesare alleges that the "physical manifestations of the hostility and stress" that he was subjected to required him to take FMLA leave from January 21, 2015 through March 23, 2015. Amend. Compl. ¶ 35. In anticipation of Mr. DiCesare's return from FMLA leave, Ms. McKrell allegedly issued a memorandum indicating that she was taking away Mr. DiCesare's Town vehicle that he had been using for six years; that she was moving his office; that he needed

to comply to a new hour-by-hour schedule for his workday; and further reducing his authority. *Id.* ¶ 36.

### 2. Termination

On or around April 26, 2015, Mr. DiCesare allegedly learned that Town Highway Department trucks were removing soil from a Town project and bringing it to the home of a relative of a Town employee "for personal gain." Amend. Compl. ¶ 41. Mr. DiCesare alleges that he informed the Town's First Selectman by e-mail. *Id.*

A few days later, at around 7:08 a.m. on April 30, 2015, Ms. McKrell allegedly handed Mr. DiCesare a written memorandum informing him that he needed to attend a meeting at 7:30 a.m. that day regarding her "intention to terminate [his] employment." Amend. Compl. ¶¶ 42-43. Mr. DiCesare alleges that he requested the meeting to be postponed until "he was afforded proper notice of the allegations against him, a copy of [Ms. McKrell's] written questions for him, sufficient time to prepare a response, and a union representative of his choosing." *Id.* ¶ 44. Ms. McKrell allegedly denied all of these requests. *Id.* ¶ 45. Following the meeting, Ms. McKrell allegedly terminated Mr. DiCesare. *Id.* ¶ 47. Mr. DiCesare alleges that the meeting and procedure leading to his termination was "replete with personal bias, false allegations of poor performance and incomplete due process." *Id.* ¶ 50.

### B. Grievance Procedure

On or around January 26, 2015, before his termination, Mr. DiCesare allegedly filed three grievances with Mr. Pacileo regarding various allegations included in his Amended Complaint, including the five-day suspension. Amend. Compl. ¶ 40. On February 13, 2015 and May 1, 2015, the Union allegedly filed additional grievances on behalf of Mr. DiCesare regarding the alleged suspension. Def.'s Br. Ex. F, ECF No. 24. Following his termination, the Union

allegedly filed another grievance on Mr. DiCesare's behalf. Amend. Compl. ¶ 59. The arbitration process regarding the three union grievances concerning Mr. DiCesare's alleged suspension are allegedly ongoing, as is the arbitration process for the remaining grievances. Satti Aff. ¶¶ 7-12, Def.'s Br. Ex. A, ECF No. 24.

The CBA provides that a "grievance" is "defined as a claim by an employee or a group of employees or the Union that there has been a violation, misinterpretation or misapplication of the specific rpovisions of this agreement. CBA Art. V § 5.1, Pl.'s Br. Ex. A, ECF No. 28-1. The CBA further provides that "[j]urisdiction of the authority of the arbitrator and his opinion and award shall be confined to the interpretation and/or application of the provisions of this agreement at issue between the Union and the Employer." CBA Art. V § 5.6.

The CBA further provides that "no provisions" of the CBA "shall deem to limit or curtail the [Town] in any way in the exercise of the rights, powers and authority which the [Town] had prior to the effective date" of the CBA. CBA Art. III § 3.1. Under the CBA:

> The Union recognizes that the [Town's] rights, powers and authority include, but are not limited to: the right to manage its operations; direct, select, decrease, and increase the work force, including hiring, promotion, demotion, transfer, suspension and/or discharge for just cause or layoff; the right to make all plans and decisions on all matters involving its operations . . . the scheduling of operations, means and processes of operations . . . and the right to introduce new and improved methods and facilities and to change existing methods and facilities; the right to maintain discipline and efficiency of employees, to prescribe rules to that effect; to establish and change standards and quality standards . . . the right to establish, create, revise, and implement reasonable work rules and regulations including performance evaluations . . . and the criterion upon which bargaining unit members shall be evaluated which shall be used to determine . . . discipline and discharge for cause.

*Id.* The CBA also provides that "[t]he Town shall have the option of providing a municipal vehicle" to employees. CBA Art XII § 12.1.A.

## II.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted).  When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion [s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

7

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," and the court should "constru[e] all ambiguities and draw[] all inferences in a plaintiff's favor." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted). Where a defendant's motion to dismiss raises a "factual attack for lack of subject matter jurisdiction," the Court "must determine whether the factual predicate for subject matter exists." *Russo v. City of Hartford*, 184 F. Supp. 2d 169, 178 (D. Conn. 2002). In making this determination "there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented in an affidavit or otherwise in addition to the complaint." *Id.* (citing *Kamen*, 791 F.2d at 1011 ("However, when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.")).

## III.  DISCUSSION

Defendants move to dismiss Counts Six, Seven, Eight, Nine, Ten, and Eleven of Mr. DiCesare's Amended Complaint. ECF No. 23. Count Six alleges that the Town and Ms. McKrell violated Mr. DiCesare's rights under the FMLA. Amend. Compl. at 19. Count Seven alleges that Ms. McKrell and the Town are liable for defamation against him under Connecticut common law. *Id.* at 20. Count Eight alleges that Ms. McKrell and the Town are liable for invasion of privacy under Connecticut common law. *Id.* at 20-21. Count Nine alleges that Mr. Pacileo and the Town violated Conn. Gen. Stat. § 1-200 *et seq.* (the "Connecticut Freedom of Information Act"). *Id.* at 21-24. Count Ten alleges that Ms. McKrell is liable for intentional infliction of emotional distress under Connecticut common law. *Id.* at 25. Count Eleven alleges

that Ms. McKrell is liable for the negligent infliction of emotional distress under Connecticut common law.  *Id.* at 25-26.

Defendant moves to dismiss Counts Six, Seven, Eight, Ten, and Eleven for a lack of subject matter jurisdiction because Mr. DiCesare had not exhausted the administrative remedies provided in the CBA's grievance procedures.  Def.'s Br. at 8-11, ECF No. 24.  Defendant moves to dismiss Count Nine for failure to state a claim, arguing that the Connecticut Freedom of Information Act does not provide a private right of action.  *Id.* at 11-13.

> **A.**    **Connecticut Freedom of Information Act**

Count Nine of the Amended Complaint alleges that the Town and Mr. Pacileo violated the Connecticut Freedom of Information Act.  Amend. Compl. at 21-24.  The Connecticut Supreme Court has held that the Connecticut Freedom of Information Act "does not provide a private right of action."  *Pane v. City of Danbury*, 267 Conn. 669, 673 (2004), *overruled on other grounds*, *Grady v. Town of Somers*, 294 Conn. 324 (2009).  The Connecticut Supreme Court found that "the legislature intended that the civil penalty provided by [Conn. Gen. Stat.] § 1-206(b)(2) would be the exclusive remedy for the violation of a right conferred by the FOIA."  *Id.* at 680; *see also* Conn. Gen. Stat. § 1-206(b)(2) ("[T]he commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars.").

Plaintiff's brief fails to address Defendant's argument that Count Nine should be dismissed for failure to state a claim because the Connecticut Freedom of Information Act does not provide a private right of action.  *See generally* Pl.'s Br., ECF No. 28.  The Court therefore grants Defendant's motion to dismiss Count Nine for failure to state a claim.

### B. Exhaustion of Administrative Remedies

Under Connecticut law, "collective bargaining agreement procedures are the exclusive remedy unless the parties expressly agree otherwise," thus "where nothing is said in the collective bargaining agreement about exclusivity, the agreement is considered to be the exclusive remedy." *Saccardi v. Bd. of Educ. of the City of Stamford*, 45 Conn. App. 712, 720 (1997). "It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement . . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Hunt v. Prior*, 236 Conn. 421, 431 (1996); *see also Sweeney v. Enfield Bd. of Educ.*, No. 3:14-CV-01511 (MPS), 2015 WL 4722969, at *5 (D. Conn. Aug. 10, 2015) (finding no subject matter jurisdiction over plaintiff's breach of contract claim because he had not exhausted the grievance procedures provided under the collective bargaining agreement).

Connecticut courts recognize exceptions to this exhaustion requirement "only infrequently and only for narrowly defined purposes." *Hunt*, 236 Conn. at 432. "One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate." *Id.*

#### 1. FMLA Claim

Count Six alleges that the Town and Ms. McKrell violated Mr. DiCesare's rights under the FMLA. Amend. Compl. at 19. Conn. Gen. Stat. § 31-51bb provides additional exceptions to the exhaustion requirement, that "[n]o employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal Constitution or under a state statute solely because the employee is covered by a collective bargaining agreement."

10

Conn. Gen. Stat. § 31-51bb. The Connecticut Supreme Court has found that, through Conn. Gen. Stat. § 31-51bb, "the legislature intended to eliminate the requirement that a plaintiff who is subject to a collective bargaining agreement exhaust all grievance and arbitration procedures before pursuing any statutory remedies in the trial court" and that "an employee who does not exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action . . . if the cause of action is premised on an independent statutory claim." *Nyenhuis v. Metro. Dist. Comm'n*, 300 Conn. 708, 716 (2011) (discussing case brought under Conn. Gen. Stat. § 53-39); *see also Genovese v. Gallo Wine Merchants, Inc.*, 226 Conn. 475, 493 (1993) ("[W]e are persuaded that the language of § 31–51bb, illuminated by its legislative history, supports the conclusion that the legislature intended to permit an employee, despite his prior voluntary submission of a related claim to final arbitration under a collective bargaining agreement, to pursue a statutory cause of action in the Superior Court.")

Although Conn. Gen. Stat. § 31-51bb does not, by its text, exempt federal statutory claims, such as FMLA claims, from the exhaustion requirement, courts have generally found that federal statutory actions are not subject to the exhaustion requirement. *See Ciasullo v. State, Dep't of Envtl. Prot.*, No. CV084037300, 2009 WL 1312724, at *6 (Conn. Super. Ct. Apr. 14, 2009) (holding that plaintiff need not exhaust administrative remedies prior to bringing FLSA claim despite acknowledging "that while § 31-51bb allows for causes of action arising under the state or federal constitution or under a state statute, it does not include causes of action under federal statutes" (internal quotation marks omitted)); *Mefferd v. City of Middletown*, No. 06 97 67, 1995 WL 681611, at *5 (Conn. Super. Ct. Nov. 3, 1995) (finding that "the plaintiffs are not required to exhaust their administrative remedies" before bringing Section 1983 claims); *but see Serafin v. Connecticut*, No. 3:98-CV-398 (CFD), 2005 WL 578321, at *8 (D. Conn. Mar. 9,

2005) (taking into account that "neither the text of § 31-51bb nor the statute's legislative history indicates that it was intended to apply to federal statutory claims, the Court finds that § 31-51bb cannot apply to causes of action arising under federal statutes such as the FMLA" in order to find that arbitration proceeding completed prior to plaintiff initiating lawsuit had *res judicata* effect).

Because the exhaustion requirement in Conn. Gen. Stat. § 31-51bb is not intended to preclude plaintiffs subject to a collective bargaining agreement, such as Mr. DiCesare, from bringing a cause of action "premised on an independent statutory claim," *Nyenhuis*, 300 Conn. at 716, the Court finds that the exhaustion requirement does not prevent Mr. DiCesare from bringing his FMLA claim. *See Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) ("We begin by noting that there is no administrative prerequisite to filing an FMLA claim; the FMLA does not require an exhaustion of administrative remedies prior to initiation of a lawsuit under its provisions."). The Court therefore denies Defendants' motion to dismiss Count Six of the Amended Complaint.

### 2. Common Law Claims

Counts Seven, Eight, Ten, and Eleven alleges that the Defendants are liable for various common law claims under Connecticut law. Amend. Compl. at 20-26. Mr. DiCesare argues that the CBA in this case is narrow and alleges that it does not cover the disputes alleged in Counts Seven, Eight, Ten, and Eleven and that he should not, therefore, be required to exhaust his administrative remedies before bringing these claims. Pl.'s Br. at 3-7.

"In determining whether a tort claim is subject to the grievance procedures of a collective bargaining agreement, the critical inquiry . . . is whether the tortious conduct is encompassed by the terms of the agreement." *Sobczak*, 88 Conn. App. at 109. Courts have found that a collective bargaining agreement that defines a grievance as a "violation of a specific term or terms of this

Agreement or a problem incident to job descriptions, classifications, duties, and working conditions," covers various tort claims including a negligent infliction of emotional distress claim premised on a "hostile work environment." *Id.*

The Connecticut Supreme Court has found that a collective bargaining agreement that defined a grievance as "a complaint by an administrator or a group of administrators that there has been a violation, misinterpretation or misapplication of a specific provision or provisions of this contract," did not govern or require exhaustion in a case where plaintiff alleged constructive discharge and other claims including intentional infliction of emotional distress because a defendant supervisor allegedly harassed and tormented her, forcing her to resign and find another job. *Mendillo v. Bd. of Educ. of Town of E. Haddam*, 246 Conn. 456, 476 (1998), *overruled on other grounds*, *Campos v. Coleman*, 319 Conn. 36 (2015). The court found that defendants could not point to "any 'specific provision' of the agreement that would be violated, misinterpreted or misapplied" by the supervisor's alleged tortious conduct and that the court's "examination of the agreement d[id] not disclose any such provision" because it governed only "matters of compensation and conditions of employment," and not alleged "intentional tort[s] by one employee . . . against another." *Id.* at 466-67.

Mr. DiCesare argues that the grievance procedure in the CBA only governs "the interpretation and/or application of the provisions of [the CBA]," and that the CBA is thus too narrow in scope to encompass his common law claims for defamation, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. CBA Art. V ¶ 6. The CBA also provides, however, that it shall not "limit or curtail the [Town] in any way in the exercise of the rights, powers and authority which the [Town] had prior to the effective date" of the CBA, and that such powers included the right to "direct, select, decrease,

13

and increase the work force, including hiring, promotion, demotion, transfer, suspension and/or discharge for just cause," "the right to maintain discipline and efficiency of employees, to prescribe rules to that effect; to establish and change standards and quality standards," and the "right to establish, create, revise, and implement reasonable work rules and regulations including performance evaluations . . . and the criterion upon which bargaining unit members shall be evaluated which shall be used to determine . . . discipline and discharge for cause." CBA Art. III § 3.1.

Unlike in *Mendillo* where the plaintiff did not allege that the defendant actually terminated her or used the workplace disciplinary procedures against her, Mr. DiCesare's case relies primarily on allegations regarding the Defendants' conduct in relation to changing his duties and responsibilities, changing his conditions of employment, and suspending and terminating his employment. The CBA's provisions allow the Town to suspend or discharge employees "for just cause," CBA Art. III § 3.1, and Mr. DiCesare's allegations show that Ms. McKrell and the Town represented to Mr. DiCesare that they suspended and terminated him for cause, even if Mr. DiCesare disputes the truth of their stated justifications. Furthermore, many of Mr. DiCesare's allegations relate to Defendants' allegedly changing his conditions of employment as retaliation for his requesting to be part of the Union's bargaining unit, including by modifying or reducing his duties and criticizing his job performance. The CBA arguably governs these allegations because it allows the Town "the right to maintain discipline and efficiency of employees" and the right to establish and revise "reasonable work rules and regulations including performance evaluations." CBA Art. III § 3.1

The Court therefore finds that "the tortious conduct" that Mr. DiCesare alleges in Counts Seven, Eight, Ten, and Eleven of the Amended Complaint are "encompassed by the terms of the

[CBA]," and that he must exhaust his administrative remedies before he can bring those claims. *Sobczak*, 88 Conn. App. at 109. The Court grants Defendants' motion to dismiss these claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss the Amended Complaint in part. Count Nine is dismissed for failure to state a claim because the Connecticut Freedom of Information Act does not allow a private right of action. Counts Seven, Eight, Ten, and Eleven of the Amended Complaint are dismissed for lack of subject matter jurisdiction because Mr. DiCesare had not exhausted the administrative remedies provided in the CBA's grievance procedures. Count Six will proceed because Mr. DiCesare need not exhaust the grievance procedures before bringing his FMLA claim.

SO ORDERED at Bridgeport, Connecticut, this 17th day of March, 2017.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge