MANDATE

Case 3:15-cv-01703-VAB Document 114 Filed 09/09/20 Page 1 of 8

19-148
DiCesare v. Town of Stonington

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION SUMMARY ORDER). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1  At a stated term of the United States Court of Appeals for the Second Circuit,
2  held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of
3  New York, on the 14th day of August, two thousand twenty.
4
5  **PRESENT:**
6  **BARRINGTON D. PARKER,**
7  **SUSAN L. CARNEY,**
8  *Circuit Judges,*
9  **LEWIS A. KAPLAN,**
10  *District Judge.*
11  _____
12
13  **Louis DiCesare, II,**
14
15  *Plaintiff-Appellant*,
16
17  v.                                                                  19-148
18
19  **Town of Stonington and Barbara McKrell,**
20  **In their individual and official capacities,**
21
22  *Defendants-Appellees*.
23
24  _____
25
26
27  FOR PLAINTIFF-APPELLANT:         Kristi D. Kelly and Bryan P. Fiengo,
28                                   Suisman, Shapiro, Wool, Brennan, Gray &
29                                   Greenberg, P.C., New London, CT.

---

\* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

MANDATE ISSUED ON 09/09/2020

**FOR DEFENDANTS-APPELLEES:**     John G. Dolan and Gary C. Kaisen, Milano & Wanat, LLC, Branford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**

Plaintiff-Appellant, Louis DiCesare, II, a former employee of the Town of Stonington (the "Town"), sued the Town and his former supervisor Barbara McKrell alleging that they unlawfully terminated his employment in violation of his First Amendment right to free speech and his Fourteenth Amendment right to due process. *See* 42 U.S.C. § 1983. He also brought claims under the Family and Medical Leave Act ("FMLA") and several state statutes. The District Court granted summary judgement to the Town, dismissed the operative complaint and declined to exercise supplemental jurisdiction over the state-law claims. *DiCesare v. Town of Stonington*, No. 3:15-CV-01703 (VAB), 2018 WL 6592088, at *12 (D. Conn. Dec. 13, 2018). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

## DISCUSSION

### I.

DiCesare contends that the District Court erred in dismissing his First Amendment claim because contested issues of fact exist as to whether the Appellees retaliated against him for sending two emails—emails that DiCesare contends concerned matters of public concern. We disagree. As noted by the District Court, DiCesare's statements in his December 2014 and April 2015 emails were made primarily to address issues relating to his official duties and work-related

2

grievances. For example, the December 2014 email, entitled "Winter operations," concerned DiCesare's grievances with McKrell, his new supervisor, and her changes in winter operating procedures. App'x at 166. In that email, DiCesare expressed disagreement with certain of her instructions to him and with policy and staffing changes she had made. We agree with the District Court that these statements concerned McKrell's official duties as a Town employee and were intended to address work-related grievances.

Similarly, DiCesare's statements in his April 2015 email were, for First Amendment purposes, made as an employee not as a private citizen. That email addressed calls from town residents on two issues on which DiCesare sought guidance. The first call related to an employee's alleged use of personal equipment for a Highway project and the second call concerned a resident seeing a Town truck in a nearby area. As to the second call, DiCesare explained that it "[wa]s [his] belief that raw materials were being disposed of at T. Kenna's property," which "[wa]s another practice that had occurred in the past and was discouraged." App'x at 288. DiCesare concluded by asking "if there has been a change in the Town's position regarding th[ese] issues" so that he could "accurately answer questions" from the public. *Id.* These statements were made pursuant to DiCesare's responsibilities as a highway supervisor, not as a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006).

DiCesare contends that some of his statements in the two emails could be construed as addressing matters of public concern. Appellant's Br. at 29-31. However, "[r]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of a public employee's comments could be construed broadly to implicate matters of public concern." *Ruotolo v. City of New York*, 514 F.3d

3

1    184, 190 (2d Cir. 2008) (internal quotation marks and brackets omitted). In any event, DiCesare

2    has not offered evidence raising a genuine issue of fact as to whether the statements in the two

3    emails were "at least a substantial or motivating factor in the [adverse employment action]."

4    *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 130 (2d Cir. 2013).

**II.**

6        DiCesare further contends that the District Court erred in dismissing his due process

7    claim. Again, we see no error. It is not disputed that, as a tenured public employee who could not

8    be fired except for "cause," DiCesare enjoyed a protected property interest in his continued

9    employment. *Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997) ("[P]ublic employees who can be

10    discharged only for cause have a constitutionally protected property interest in their tenure[.]").

11    Defendants-Appellees do not dispute the property right asserted or the deprivation that resulted

12    from his termination. Where the parties differ is whether the Town afforded him adequate pre-

13    termination process in connection with his termination.

14        Before termination, "[a]s a tenured public employee[,] he was entitled to oral or written

15    notice of the charges against him, an explanation of the employer's evidence, and an opportunity

16    to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

17    Although DiCesare did not receive a written memorandum detailing the rationale for his April

18    30, 2015 termination until shortly after he was terminated, that memorandum—when reviewed,

19    as it must be, in the context of the parties' dealings over the months before his discharge—

20    reveals that the Town had identified the substance of the issues listed in the memorandum and

21    the evidence supporting the related concerns to DiCesare well before it took action. Accordingly,

22    DiCesare had knowledge of and an adequate opportunity to respond to the allegations during the

meeting since the issues were well known to him: we see no basis in the record for concluding otherwise.

In particular, the termination memorandum focused on DiCesare's alleged mismanagement of a paving project on Elm Ridge Road, his failure to review employee timesheets, and his failure to produce "daily planning and end of the day inspection reports." App'x at 86-87. The record reflects that, in March, about one month earlier, McKrell asked DiCesare to prepare a written explanation for alleged deficiencies in his work on Elm Ridge Road—deficiencies that had been detailed in a report prepared by the Town Engineer. Similarly, DiCesare's numerous documented interactions with McKrell leave no doubt that McKrell had repeatedly expressed her concerns about DiCesare's failure sufficiently to review employee timesheets and timely to produce planning and inspection reports; thus, these concerns were also well known to DiCesare by April 30. Thus, on April 30, when DiCesare received notice of a hearing to discuss what the Town saw as his "deficiencies," exactly what conduct the Town considered objectionable by then was well known to him. App'x at 290. Then, at that hearing, McKrell asked DiCesare further questions about the alleged mismanagement of the Elm Ridge Road project and gave him an opportunity to respond. DiCesare declined to answer. He was also asked about his failures to comply with requirements bearing on timesheets and the planning and inspection reports. Again, he declined to answer. Indeed, he did not answer seven of the eight questions put to him, although the relevant facts were within his personal knowledge. In this context, we comfortably conclude that the pre-termination notice that he received was constitutionally adequate under *Loudermill*.

We also note the substantial post-termination proceedings afforded to DiCesare through a

collective bargaining agreement ("CBA") grievance and arbitration process. We have been clear that "[w]hen . . . a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001). As noted by the District Court, DiCesare took advantage of the CBA's arbitration process by filing multiple grievances contesting his discipline and participating in lengthy arbitration proceedings held on his behalf. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003) ("Courts have held that such post-deprivation [CBA arbitration] procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process.").[1]

### III.

DiCesare also argues that the District Court erred in dismissing his FMLA retaliation claim. To make out a prima facie FMLA claim, DiCesare "must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

The District Court correctly concluded that DiCesare did not make a sufficient showing on the fourth element of his FMLA claim. *DiCesare*, 2018 WL 6592088, at *10. DiCesare's

---

[1] DiCesare also contends that the district court erred in dismissing his stigma-plus claim. However, this same pre- and post-deprivation process also defeats his stigma-plus claim. *See Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("the availability of adequate process defeats a stigma-plus claim").

6

argument for retaliation is essentially temporal. He alleges that because he took leave under the FMLA from January 28, 2015 through March 23, 2015, the Town unlawfully retaliated against him by terminating his position in April 2015. However, this temporal proximity is insufficient to support an inference of retaliation. We have stated that "w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Here, the Town suspended DiCesare in late January 2015 based on several work-related issues arising in 2014 well before he took FMLA leave.

DiCesare also argues other evidence in the record supports an inference of retaliatory intent. For example, DiCesare contends that while on FMLA leave, two of his co-workers were asked to prepare affidavits regarding his performance as a supervisor on certain projects. *See, e.g.*, Appellant's Br. at 17. However, even assuming that this assertion is some evidence supporting an inference of retaliatory intent, DiCesare failed to produce evidence from which a reasonable fact-finder could find that the non-discriminatory reasons given by the Town— DiCesare's subpar performance and his insubordination—were pretextual. To make a sufficient showing of pretext to survive summary judgment, DiCesare must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks omitted). The District Court correctly concluded that he did not do so.

We have considered DiCesare's remaining arguments and we find them to be without merit.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit